IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 24, 2013 Session

## JOHN DANIEL RUDD

v.

## DEBRA ANN GONZALEZ

Appeal from the Davidson County Circuit Court
No. 90D-1949     Philip E. Smith, Judge

No. M2012-02714-COA-R3-CV - Filed February 28, 2014

This appeal involves post-divorce parental relocation. The mother notified the father that she intended to relocate outside Tennessee with the parties' minor daughter. The mother asserted that the relocation was for purposes related to her career as a surgeon. The father filed a petition opposing the relocation on the grounds that the mother's motive for the relocation was vindictive and that the relocation did not have a reasonable purpose under Tennessee's parental relocation statute. After a bench trial, the trial court held that the father had not carried his burden of proving the mother's motive was vindictive or that the relocation was not for a reasonable purpose, and so permitted the mother to relocate with the parties' child. The father now appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J. W.S., and DAVID R. FARMER, J., joined.

Helen Sfikas Rogers and Lawrence J. Kamm, Nashville, Tennessee for Petitioner/Appellant, John Daniel Rudd

Abby R. Rubenfeld, Nashville, Tennessee for Respondent/Appellee, Debra Ann Gonzalez

## OPINION

### FACTS AND PROCEEDINGS BELOW

Petitioner/Appellant John Daniel Rudd ("Father") and Respondent/Appellee Debra Ann Gonzalez ("Mother"), both physicians, were married. They had one child, a daughter adopted as a newborn in 1999.

Both parties are licensed physicians. Father was trained as an internist but began experiencing complications from a life-long physical disability. Because of this, Father stopped practicing medicine *per se* and began drawing disability benefits. After a time, Father started a business in "administrative correctional medicine," which utilizes health care professionals to provide medical care to inmates in Rutherford County, Tennessee.

Mother is a board-certified otolaryngologist. She did clinical fellowship training in microvascular reconstruction and head and neck oncology, a sophisticated surgical subspecialty of otolaryngology. In May 2001, after Mother and Father married and adopted their daughter, Mother was diagnosed with Relapsing-Remitting Multiple Sclerosis ("RRMS") which forced her to cease practicing medicine in her specialty. After that, Mother began drawing disability benefits as well.

For several years, Mother explored other specialties in medicine that might better accommodate her RRMS symptoms; for various reasons, none were satisfactory. In the meantime, Mother tried a variety of measures to alleviate her RRMS symptoms; eventually dietary changes greatly improved them. After Mother's symptoms abated, she began more aggressively seeking out opportunities to continue practicing medicine.

Eventually, the parties filed for divorce in the Circuit Court for Davidson County, Tennessee. Substantial divorce proceedings ensued. While the divorce proceedings were pending, Mother continued to pursue avenues to practice medicine in the Nashville, Tennessee area, including discussions with representatives of Vanderbilt University about the prospect of Mother doing general otolaryngology at a satellite office in Franklin, Tennessee. These discussions were not fruitful.

On June 28, 2010, the trial court entered its final decree of divorce. The final decree incorporated a marital dissolution agreement and an agreed parenting plan. The parties' parenting plan designated Mother as the daughter's primary residential parent and allocated Father 120 days of alternate residential parenting time.

About a year and three months later, on September 27, 2011, Mother sent Father a certified letter to notify him of her plan to relocate with their daughter to Springfield, Illinois. After an approximate 10-year absence from her specialty, Mother said that she planned to retrain in her subspecialty, microvascular reconstruction and head and neck oncology, at Southern Illinois University ("SIU") School of Medicine. The dietary and other changes that Mother made abated her RRMS symptoms enough to allow her to return to practicing in this area.

Father did not agree with Mother's plan. On October 11, 2011, he filed a petition in opposition to Mother's relocation in the trial court. The petition asserted that Mother's contemplated relocation did not have a reasonable purpose, was vindictive, and posed a substantial threat of harm to their daughter. Mother filed a counter-petition asking the trial court to approve her proposed relocation.

In November 2011, Mother's former attorney sent correspondence to Father, alluding to possible tort claims against him for alleged actions that she discovered in the course of discovery in the divorce litigation. Mother asserted that, in 2005, Father secretly took her medical records to an expert in multiple sclerosis for evaluation; Mother claimed that the expert suggested to Father that Mother's diagnosis may have been incorrect, and that Father did not disclose this information to Mother. Prior to a tort lawsuit being filed, in March 2012, Mother's former attorney sent Father a letter offering to forego the tort lawsuit if he elected to withdraw his petition opposing relocation.

When Father declined Mother's offer to dismiss the tort claims in exchange for dropping his objection to her relocation, she filed a separate tort lawsuit against Father in another division of the Circuit Court of Davidson County. The lawsuit sought compensatory damages under a variety of tort theories, including outrageous conduct, intentional misrepresentation, negligent misrepresentation, and fraudulent concealment. Despite the fact that Father declined to relent on his opposition to Mother's proposed relocation, Mother eventually nonsuited her tort lawsuit against Father.

The trial court below scheduled the trial on Mother's proposed relocation for three days in August 2012. In advance of the trial, Mother filed a proposed new parenting plan that allocated Father 125 days of residential parenting time with the parties' daughter.

A few days before the scheduled trial, Father changed his position on whether he and Mother had substantially equal intervals of parenting time with their daughter. In prior court filings, Father had not disputed that Mother spent more parenting time with their child than he did. In Father's trial brief, however, he took the position that he actually exercised substantially more parenting time than the 120 days set forth in the parties' parenting plan, and that he in fact had only 12 days fewer than Mother during the previous year. Based on this, Father

argued that the parties had substantially equal parenting time, which would affect the standard used by the trial court under Tennessee's parental relocation statute.[1]

At the outset of the trial, the trial court heard testimony on the number of parenting days each party had with the child. The proof established that Mother agreed to Father having extra parenting time with the parties' child, over and above the parenting time allocated to Father in the parties' agreed parenting plan and that this was done at least in part to assist Mother. The trial court made a preliminary finding that Father had had 154 days of parenting time with the child during the previous year; thus, Father had approximately 42% of the total parenting time and Mother had approximately 58%.

The trial court rejected Father's argument that this amounted to substantially equal intervals of time with the child. The remainder of the relocation proceedings were premised on the trial court's holding that Mother had substantially more parenting time with the child.

At the trial, the trial court heard testimony from Mother, Father, the parties' daughter, and other witnesses. The trial court also considered deposition testimony from Mother's treating physician, the chair of the Department of Otolaryngology at Vanderbilt University, and an otolaryngologist employed by Vanderbilt who discussed employment opportunities with Mother, as well as deposition testimony from two faculty members with the SIU School of Medicine, both of whom discussed a retraining plan with Mother in her otolaryngology subspecialty.

At trial, Father took the position that Mother's separate tort lawsuit against Father demonstrated that her proposed relocation was motivated by vindictiveness. In support, Father sought to introduce into evidence the March 2012 correspondence from Mother's former attorney which Father contended was solely an attempt by Mother to get Father to withdraw his opposition to Mother's relocation, in exchange for Mother dropping the tort claims against him. The trial court held that Mother's separate tort lawsuit was not relevant to the relocation proceedings, given the statutory definition of a "vindictive" motive in the parental relocation statute. The trial court also held that correspondence from Mother's attorney constituted settlement or compromise negotiations, and thus, was inadmissible under Rule 408 of the Tennessee Rules of Evidence.

Father also argued to the trial court that Mother's proposed relocation was not for a reasonable purpose. Father contended that Mother's relocation was unnecessary because

_____

[1]As discussed in more detail below, under Tennessee Code Annotated § 36-6-108, the standard of proof for the parent who opposes relocation is considerably less if both parents spend substantially equal intervals of time with the child or children. *See* Tenn. Code Ann. § 36-6-108 (2008).

Mother could have taken a position closer to Nashville. In her testimony, Mother described her efforts to explore potential job positions, some with Vanderbilt University and its affiliates in functional medicine, sleep medicine, and general otolaryngology. For example, Mother discussed with Vanderbilt representatives a position doing general otolaryngology at a satellite office in Franklin, Tennessee. None of Mother's discussions led to a job offer; Mother testified that she removed herself from consideration for the Franklin, Tennessee otolaryngology job position because it involved primarily basic "tubes and tonsils" procedures in a non-academic setting and did not utilize her advanced subspecialty training. Mother said it was significant to her that she have a job position that allowed her to perform the specialized procedures in which she had trained.

Father also argued that Mother's proposed relocation did not have a reasonable purpose because Mother did not have a job offer in Springfield, Illinois, only the hope of securing one. The testimony of Mother's contacts at the SIU School of Medicine indicated that both were former colleagues of Mother. The testimony from Mother and the two SIU faculty members indicated that the arrangement at SIU was that the School of Medicine would develop a special program for Mother to retrain in her subspecialty; after that, a faculty appointment at the School of Medicine was "highly likely." The retraining position at SIU would have a salary of approximately $58,000 per year, with a salary renegotiation for a faculty appointment; such a faculty member would generally receive approximately $250,000 per year.

On October 29, 2012, the trial court issued an oral ruling granting Mother permission to relocate to Springfield, Illinois with the child. The trial court entered a written order on November 9, 2012. The written order adopted Mother's proposed parenting plan and attached and incorporated by reference the trial court's earlier oral ruling. The written order stated:

> This Court finds that [Father] failed to meet his burden of proof under Tenn. Code Ann. Sec. 36-6-108(d) establishing that [Mother's] move to Springfield, Illinois to take a position as a surgeon with Southern Illinois University was not for a reasonable purpose. [Father] also presented no proof that the move could cause substantial harm to the minor child. Finally, [Father] failed to carry his burden of proof that the proposed move was vindictive.
>
> The Court also finds that this is not a case where the parties had substantially equal time. After a hearing on that issue on the first day of trial, this Court finds that [Father], during the past twelve months, had visitation with the Child for 154 days, or 42.19% of the time, which is not substantially equal time. Therefore, the provisions of Tenn. Code Ann. Sec[.] 36-6-108(d) applied.

Because of the trial court's findings above, it was not necessary for the Court to reach the issue of whether the relocation was in the best interests of the minor child. This Court will allow [Mother] to relocate to Springfield, Illinois with the parties' minor child. . . .

The trial court's holding in its written order was supported by more detailed findings of fact in its oral ruling:

Additionally, the Court, after hearing the testimony of both parties, watching the demeanor of the parties during their testimony and the way they testified, the Court is giving great weight to the testimony of [Mother] and accepts her testimony where it conflicts with [Father].

The Court finds that based on [Father's] testimony in his deposition, the testimony heard by the Court, and the evidence introduced, the desire of [Mother] to retrain in her area of expertise is reasonable.

The Court further finds that retraining in her area of expertise is not available in Nashville despite the efforts of [Mother] to attempt to have Vanderbilt to retrain her in her area.

The Court further finds that the program at Southern Illinois University created for her retraining is the only program available to her at this time.

Further, the Court finds that the significanc[e] of [Mother's] retraining substantially outweighs the gravity of [Father's] loss of his schedule of alternate parenting time that he previously exercised under the original parenting plan.

Bottom line, the Court finds that [Father] failed to carry the burden of proof that [Mother's] proposed relocation does not have a reasonable purpose.

The Court further finds that there was no proof introduced by [Father] that the relocation proposed a threat of specific and serious harm to the child that outweighs the threat of harm to the child of change of custody.

Finally, [Father] argues that the move is vindictive. The basis of the argument is that the move would dramatically decrease his number of days. Additionally, [Father] claims that [Mother] is still angry towards him.

The proof established that [Mother] has always encouraged the relationship between the child and [Father]. One need not look beyond [Father's] own words in his amended petition where he states under oath, quote, he had 120 days of parenting time per year, but that the parties have also worked together well and on many occasions the father has had additional time with the minor child, end quote.

[Father] has failed to establish any sort of pattern by [Mother] to disrupt or refuse any parenting time that he was entitled to. Quite frankly, the opposite is true. The overwhelming proof establishes that[,] despite the differences between [Father] and [Mother,] . . . they have worked well together for the betterment of this minor child . . . .

[Father's] other basis that the move is vindictive is that [Mother] is angry with [him]. This, [Mother] admits; however, these parties were married and then they got divorced. There is no requirement that they be friends.

Despite [Mother's] anger towards [Father] she's continued to work with him in a positive way to ensure that he has a healthy and loving relationship with [their daughter].

[Father] claims that he would be losing days with the child. In his amended petition [Father] requests 120 days. [Mother] has offered him more than the number of days that he is requesting in his petition.

According to the unreported case Helton versus Helton – which is found at M2002-02792-COA-R3-C[V] – a Tennessee Court of Appeals case filed on January 13, 2004 – an offer – the Court of Appeals states that an offer of visitation with a schedule that would offer the same number of days or the number of days requested combined with the finding of reasonable purpose is sufficient to find that there is no vindictive motive.

The guidance of the Helton case combined with a complete lack of proof of any ill or vindictive motive on the part of [Mother] establishes that [Father] has failed to carry his burden of proof that the proposed move is vindictive.

Based on the findings and conclusions by this Court, the Court approves [Mother's] proposed relocation with the minor child . . . .

Thus, the trial court specifically credited Mother's testimony over that of Father. It held that Mother's desire to retrain in her field of expertise was a reasonable purpose to relocate, and that such retraining was available in Springfield but not in Nashville. The trial court found that Father had introduced no proof of vindictiveness and that the proof showed that Mother had worked well with Father in the best interest of their child. The trial court emphasized that Mother's proposed parenting plan gave Father both more parenting days than the prior parenting plan and more than Father requested in his petition, and thus, held Father had failed to prove that Mother's motive for the proposed relocation was vindictive.

For those reasons, the trial court permitted Mother's proposed relocation. Given the income disparity between Mother and Father, the trial court also awarded Mother a portion of her attorney fees, an award of $60,000.[2]

A few days later, Father filed a motion to alter or amend the trial court's order and for a stay while the case was pending on appeal. In an order entered on January 8, 2013, the trial court slightly altered the parenting schedule but otherwise denied the motion to alter or amend as well as Father's request for a stay. Father now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Father raises six issues:

> (1) The trial court erred when it ruled that evidence regarding Mother's tort suit against Father was inadmissible.
>
> (2) The trial court erred when it barred admission of evidence showing Mother's vindictiveness because she had purportedly proposed a parenting plan offering [F]ather the same number of days of residential time.
>
> (3) The trial court erred when it found that [M]other's proposed relocation to Springfield, Illinois, was not for a vindictive purpose.
>
> (4) The trial court erred when it found there was a reasonable purpose for [M]other's relocation to Springfield, Ill.
>
> (5) The trial court erred when it made credibility findings against the [F]ather.

---

[2] The combined total of both parties' attorney fees in this case was $195,817; the trial court noted that while these fees were "higher than one might expect," they were neither "unnecessary" nor "unreasonable" in this case.

(6) The trial court erred in awarding attorney fees to the [M]other.

We review the trial court's findings of fact *de novo*, presuming those findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); **Robinson v. Robinson**, No. M2003-02289-COA-R3-CV, 2005 WL 1541861, at *2 (Tenn. Ct. App. June 30, 2005). We give great weight to the trial court's credibility determinations, as the trial court is in the best position to assess the demeanor of the witnesses. **Robinson**, 2005 WL 1541861, at *2; **Mitchell v. Mitchell**, No. M2004-00849-COA-R3-CV, 2005 WL 1521850, at *1 (Tenn. Ct. App. June 27, 2005). Issues of law are reviewed *de novo*, with no presumption of correctness. **Nelson v. Wal-Mart Stores, Inc**., 8 S.W.3d 625, 628 (Tenn. 1999).

## ANALYSIS

"One of the most common post-divorce flashpoints occurs when the primary residential parent decides to move with his or her child or children to another city or state. The farther the move, the more intense the opposition because of the move's effect on visitation and the ability of the other parent to foster and maintain an appropriate relationship with his or her child or children." **Collins v. Coode,** No. M2002-02557-COA-R3-CV, 2004 WL 904097, at *2 (Tenn. Ct. App. Apr. 27, 2004).

An overview of the relevant statute is helpful for resolution of the issues on appeal in this case. In 1998, Tennessee's legislature initially enacted the parental relocation statute, Tennessee Code Annotated § 36-6-108, which set out the framework for courts to determine whether to permit the primary residential parent to relocate with the child outside Tennessee or more than 100 miles away inside Tennessee.[3] The statute provides that, when parents spend substantially equal amounts of time with the child, "[n]o presumption in favor of or against the request to relocate with the child shall arise," and the trial court must determine whether permitting the relocation is in the child's best interest. Tenn. Code Ann. § 36-6-108(c).

In this case, Father argued in the trial court below that he and Mother spent substantially equal intervals of time with their daughter. The trial court made a factual finding that Mother spent more parenting time with the child, and Father has not appealed that finding. Therefore, we

---

[3]Since 1998, this statute has been amended twice: once in 2007 to add subsection (i) which provides that either parent may in the discretion of the court recover reasonable attorney fees and other litigation expenses from the other parent; and again in July 2013, to be made applicable to situations in which a primary residential parent sought to relocate 50 miles away within the state of Tennessee, as opposed to 100 miles. *See* 2013 Tenn. Pub. Acts ch. 352; 2007 Tenn. Pub. Acts ch. 187. For purposes of this case, we rely on the verison of Section 36-6-108 which was in place at the time the trial in this matter occurred. *See* Tenn. Code Ann. 36-6-108 (2008).

must treat it as undisputed on appeal that Mother spends the greater amount of time with the child.

Where the parents do not spend substantially equal intervals of time with the child, Tennessee Code Annotated § 36-6-108 has "a legislatively mandated presumption in favor of [the] relocating custodial parent. . . ." *Collins*, 2004 WL 904097, at *2. *See also Elder v. Elder*, No. M1998-00935-COA-R3-CV, 2001 WL 1077961, at *5 (Tenn. Ct. App. Sept. 14, 2001). Under Tennessee Code Annotated § 36-6-108(d)(1), the trial court must grant the primary residential parent permission to relocate unless the parent opposing relocation proves at least one of three enumerated grounds: (1) that the relocation does not have a reasonable purpose; (2) that the relocation poses a threat of specific and serious harm that outweighs the risk of harm that would result from a change of custody; or (3) that the primary residential parent's motive for the relocation is vindictive. Tenn. Code Ann. § 36-6-108(d)(1)(2008); *Webster v. Webster,* No. W2005-01288-COA-R3-CV, 2006 WL 3008019, at *8 (Tenn. Ct. App. Oct. 24, 2006). The parent opposing the relocation bears the burden of proof to establish one of these three grounds, and if he or she fails to do so, the relocation must be permitted. *Webster,* 2006 WL 3008019, at *14; *In re Iyana R. W*., No. E2010-00114-COA-R3-JV, 2011 WL 2348458, at *3 (Tenn. Ct. App. June 8, 2011). If the parents do not spend substantially equal intervals of time with the child, the trial court will not address the issue of whether the relocation is in the best interest of the child until and unless one of the statutory grounds is proven. *See* Tenn. Code Ann. § 36-6-108(e); *Kawatra v. Kawatra*, 182 S.W.3d 800, 803 (Tenn. 2005). We now address the arguments Father raises on appeal.[4]

### Vindictive Motive

Several of Father's issues center on the ground for opposing relocation set forth in Section 36-6-108(d)(1)(C), that the primary residential parent's motive for relocation is "vindictive." Father argues overall that Mother's anger toward him over various issues showed vindictiveness. In particular, Father points to Mother's separate tort lawsuit against him, Mother's actions related to the sale of the marital home, and Mother's accusations that Father was "racially insensitive" and that he prescribed a "controlled substance" for their minor child. Specifically, Father contends that the trial court erred in excluding from evidence correspondence from Mother's attorney offering to drop the tort claims if Father dropped his opposition to Mother's move, as well as evidence that Mother filed a purportedly false affidavit in connection with the sale of the marital home. Father also maintains that the trial court erroneously relied on *Helton v. Helton,* No. M2002-02792-COA-R3-CV, 2004 WL

---

[4] We note that Father has also not raised as an issue on appeal whether the trial court erred in finding that the relocation did not pose a threat of specific and serious harm that outweighed the risk of harm that would result from a change of custody, thus we do not address it.

63478 (Tenn. Ct. App. Jan. 13, 2004), because Mother's proposed parenting plan allocated to Father less parenting days than he *actually received* in the previous year, in light of the fact that he got more parenting time than was stated in the parties' parenting plan.

As noted by the learned trial judge below, the term "vindictive" is a defined term under the parental relocation statute. Under Section 36-6-108(d)(1)(C), the trial court may hold that the primary residential parent's motive for the proposed relocation is "vindictive" only if the parent who opposes relocation proves that the relocation "is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child." Tenn. Code Ann. §36-6-108(d)(1)(C)(2008). Where the legislature defines a term, courts applying the statute must utilize the statutory definition. ***State v. Goodman***, 90 S.W.3d 557, 565 (Tenn. 2002) ("[T]his Court must presume that the legislature says in a statute what it means and means in a statute what it says.").

From our review of the transcript of the trial proceedings and the trial court's ruling and order, it appears that the trial court held first that the evidence Father sought to introduce was not relevant in light of the statutory definition of the term "vindictive." In addition, as to the correspondence from Mother's attorney on the tort claims, the trial court excluded it as attempts to settle or compromise a claim within the meaning of Rule 408 of the Tennessee Rules of Evidence.[5] The trial court was of course aware of its own factual finding at the outset of the trial that Father actually received more parenting days than was allocated to him under the parties' parenting plan and pointed out that this fact showed that Mother had supported Father's relationship with the child and had consistently cooperated with Father to co-parent.

In our view, the trial court's analysis was spot on. First and foremost, we are not at liberty to broaden the definition of "vindictive" provided by the legislature in the parental relocation statute. None of the evidence Father sought to offer tends to show vindictiveness within the

---

[5]Rule 408 states:

> Evidence of (1) furnishing or offering to furnish or (2) accepting or offering to accept a valuable consideration in compromising or attempting to compromise a claim, whether in the present litigation or related litigation, which claim was disputed or was reasonably expected to be disputed as to either validity or amount, is not admissible to prove liability for or invalidity of a civil claim or its amount or a criminal charge or its punishment. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Tenn. R. Evid. 408 (2013).

meaning of the statute. *See* Tenn. R. Evid. 401.[6] Mother's anger at Father over specific divorce-related issues, or indeed her general anger at him in the wake of the divorce, does not in and of itself demonstrate vindictiveness. If vindictiveness could be established merely by proving that the primary residential parent retained bad feelings toward the other parent in the wake of the divorce, few divorced parents would ever receive court permission to relocate with the parties' child. As the trial court wryly observed, "[T]hese parties were married and then they got divorced. There is no requirement that they be friends."

We also find no error in the trial court's decision to exclude the correspondence from Mother's attorney about the possibility of dismissing Mother's separate tort claims under Rule 408 of the Tennessee Rules of Evidence. *See White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-223 (Tenn. Ct. App. 1999)(trial court's evidentiary decisions reviewed under an abuse of discretion standard.").

We agree with the trial court that Father "failed to establish any sort of pattern by [Mother] to disrupt or refuse any parenting time that he was entitled to. Quite frankly, the opposite is true." The undisputed evidence shows that, whatever residual ill feelings Mother may have had toward Father after the dissolution of their marriage, she put them aside to support Father's relationship with the child and to give Father more parenting time than was allocated to him under the parties' agreed parenting plan. Under all of these circumstances, we affirm the trial court's holding that Father failed to carry his burden of proving that Mother's motive for relocating was vindictive.

### Reasonable Purpose

Father also argues that the trial court erred in holding that Mother's proposed relocation was for a reasonable purpose. He emphasizes that the evidence showed that, at the time of trial, Mother had not received an actual job offer from SIU; rather, she had only the hope of a job offer after her retraining. Father insists that the evidence does not show that SIU created a retraining program for Mother. He contends that the evidence does not support the trial court's finding that neither retraining nor a job were available in the Nashville area, because Mother removed her name from consideration for a job with Vanderbilt. Father argues that re-entering her otolaryngology subspecialty would be financially detrimental to Mother because she would lose her disability payments and that the stress that would accompany Mother's re-entry into her subspecialty would increase the probability of a relapse of her RRMS. For all of these

---

[6]Rule 401 of the Tennessee Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401 (2013).

reasons, Father argues, the trial court erred in holding that Mother's proposed relocation was for a reasonable purpose.

This Court has previously discussed the "reasonable purpose" ground for opposing a proposed relocation:

> Although the statute does not elaborate on the meaning of the ground that the relocation "does not have a reasonable purpose," since the statute was apparently enacted with reference to the court's opinion and dissent in *Aaby v. Strange*, we interpret the statute against that backdrop. In her dissent, Justice White obviously emphasized the seriousness of the loss, to the child as well as the non-custodial parent, of the opportunity for the non-custodial parent to participate in the child's activities, such as soccer games and recitals, even if the activities do not fall within the non-custodial parent's designated "parenting time." *Aaby [v. Strange]*, 929 S.W.2d [623], 631 [(Tenn. 1996)]. She advocated requiring the parent who proposes to relocate to establish "some reason" for the move, observing that such a rule would oblige the custodial parent to"deliberate" and "evaluate" a decision to move, without impeding "the custodial parent's freedom of movement. . . ." *Id.* She advocated an approach that would "not destroy the efforts" of non-custodial parents "to participate more fully in their children's lives. . . ." *Id.*
>
> While the *Aaby* dissent advocated requiring the relocating parent to prove "some reason" for the move, the statute ultimately enacted incorporated a more rigid structure. First, the parent seeking to relocate with the child must notify the other parent of the proposed move. T.C.A. § 36-6-108(a) (2005). The notice must contain, *inter alia*, the relocating parent's "reasons for the relocation. . . ." T.C.A. § 36-6-108(a)(3) (2005). If the parties cannot agree, the parent opposing relocation must file a petition stating such opposition. T.C.A. § 36-6-108(d)(1) (2005). The parent seeking to relocate may not do so until he or she has received the court's permission. *Id.* The statute then provides that the court " shall " grant such permission to relocate unless it finds one of the enumerated grounds for denial of permission, such as the fact that the relocation does not have a reasonable purpose. *Id.*
>
> Therefore, in sum, the parent seeking to relocate is required initially to state his or her reasons for the proposed relocation. T.C.A. § 36-6-108(a)(3) (2005). The burden then is on the parent opposing the move to prove that the proposed relocation "does not have a reasonable purpose." T.C.A. § 36-6-108(d)(1)(A)

-13-

(2005). If this burden of proof is not carried, the trial court is obliged to grant permission for the relocation. ***Id.***

> In context, it is clear that the "reasonable purpose" of the proposed relocation must be a significant purpose, substantial when weighed against the gravity of the loss of the non-custodial parent's ability "to participate fully in their children's lives in a more meaningful way." *Aaby*, 924 S.W.2d at 631. However, the statute clearly includes a presumption in favor of permitting relocation, which appears to reflect the *Aaby* majority's observation that "the interests of the custodial parent and the interests of the child are basically interrelated, even [if] they are not always precisely the same." ***Id.*** at 629. Moreover, the statute is plainly structured so that the issue of the best interest of the child is not reached unless and until a ground to deny relocation is established. This structure suggests that the "reasonable purpose" ground is not intended to be a guise under which the trial court goes directly to the question of whether the move is in the child's best interest, as was the common law under cases preceding ***Aaby v. Strange***. This statutory structure facilitates the goals, reiterated in *Aaby*, of limiting judicial intervention and making disputes easier to resolve if they must be litigated. ***Id.***

***Webster,*** 2006 WL 3008019, at \*13-14. Thus, the parent who seeks to relocate must state the reasons for the proposed relocation in the notice to the other parent. The parent who opposes relocation then has the burden of proving that the proposed relocation is not for a reasonable purpose. ***Id.*** at \*14; ***see also Mann v. Mann*** 299 S.W. 3d 69, 74 (Tenn. Ct. App. 2009).

There are no bright-line rules with regard to what constitutes a reasonable purpose for a proposed relocation. ***In re H.L.B-K.***, No. M2010-00561-COA-R3-JV, 2010 WL 4940586, at \*3 (Tenn. Ct. App. Nov. 30, 2010). "[D]eterminations concerning whether a proposed move has a reasonable purpose are fact-intensive and require a thorough examination of the unique circumstances of each case." ***Lima v. Lima***, No. W2010-02027-COA-R3-CV, 2011 WL 3445961, at \*7 (Tenn. Ct. App. Aug. 9, 2011)(citing ***In re Spencer E.***, No. M2009-02572-COA-R3-JV, 2011 WL 295896, at \*11 (Tenn. Ct. App. Jan. 20, 2011)). "[R]elevant economic factors that are typically considered include, without limitation, the relative significance of the increase, the cost of living in the proposed location compared to the present location, the firmness of the job offer, opportunity for career advancement and economic betterment of the family unit." ***Slaton v. Ray***, No. M2004-01809-COA-R3-CV, 2005 WL 2756076, at \*3 (Tenn. Ct. App. Oct. 24, 2005)(citing ***Mitchell v. Mitchell***, No. M2004-00849-COA-R3-CV, 2005 WL 1521850, at \*3 (Tenn. Ct. App. June 27, 2005)). "Doubtless, relocation because of a better job opportunity, greater salary, and career advancement opportunities, establishes a "reasonable purpose" within the meaning of the statute." ***Butler v. Butler***, No. M2002-00347-

COA-R3-CV, 2003 WL 367241, at *2 (Tenn. Ct. App. Feb. 20, 2003). On the other hand, under the circumstances presented in other cases, the court has found when there is no firm job offer and no proof of better job opportunities that the move was not for a reasonable purpose. *Rogers v. Rogers*, No. M2008-00918-COA-R3-CV, 2009 WL 1034795, at *6 (Tenn. Ct. App. Apr. 16, 2009) (citing cases). Non-economic factors must be considered as well. In all cases, the reason for the proposed relocation must be "substantial when weighed against the gravity of the loss of the non-custodial parent's ability 'to participate fully in their children's lives in a more meaningful way.' " *Webster,* 2006 WL 3008019, at *14 (quoting *Aaby*, 924 S.W.2d at 631).

In the case at bar, the trial court held that Mother's "desire . . . to retrain in her area of expertise is reasonable." It also made a factual finding "that retraining in her area of expertise is not available in Nashville despite [Mother's] efforts . . . to attempt to have Vanderbilt to retrain her in her area." As to Mother's arrangement with SIU, the trial court found "that the program at Southern Illinois University created for her retraining is the only program available to her at this time." From our review, these findings are supported by the evidence in the record.

On appeal, Father rightly emphasizes that Mother does not have an actual job offer or a guarantee that she will get a faculty position at SIU once she completes her retraining. Mother testified that some of the terms of her employment offer were still evolving, that SIU was working on a formal offer to pay her a modest salary during her retraining, and then upon completion, offer her a faculty position with an accompanying raise in pay. The SIU faculty members testified that SIU had proposed an offer "to come on board in a fairly unstructured situation" and that the chances of Mother obtaining a faculty position were "highly likely."

While we recognize that Mother's job offer was not guaranteed, it is also important to note that non-economic factors are part of the equation. In this case, Mother is a highly trained medical professional who practiced in a sophisticated subspecialty and was then forced to give up her chosen profession for many years because of a debilitating disease. After gaining a measure of control over the symptoms of her disease, and after exhaustive efforts to find retraining in her subspecialty, she found an opportunity to complete the retraining and practice her chosen medical subspecialty again. As the trial court found, Mother's desire to retrain in her area of expertise is reasonable.

The burden that Mother's proposed relocation would place on Father's relationship with the parties' daughter must be weighed in the overall determination of whether the relocation has a reasonable purpose. The trial court did just that, and found "that the significanc[e] of [Mother's] retraining substantially outweighs the gravity of [Father's] loss of his schedule of alternate parenting time that he previously exercised under the original parenting plan." Under the totality of the circumstances, the trial court held that Father failed to carry his burden of

-15-

proving that Mother's proposed relocation was not for a reasonable purpose. From our review of the record, we must conclude that the trial court did not err in this holding.[7]

"Parental relocation cases are frequently heartbreaking, with profound competing considerations and impact on both parents and the subject children." *Rutherford v. Rutherford,* No. M2012-01807-COA-R3-CV, 2013 WL 1928542, at *9 (Tenn. Ct. App. May 7, 2013)(Kirby, J., concurring separately). We must affirm the trial court's decision to grant Mother permission for the proposed relocation to Springfield, Illinois.

## Attorney Fees

Finally, Father argues that the trial court erred in awarding Mother $60,000 in attorney fees, a portion of the attorney fees she incurred in the relocation proceedings. He contends that he and Mother both contributed to the delay and the number of issues brought to the trial court. Father acknowledges that he makes between $300,000 and $400,000 per year, compared to Mother's disability income of $9,240 per month. He notes, however, that Mother obtained considerable assets in the division of the parties' marital property and argues that she is able to pay her own attorney fees. He characterizes the trial court's award of attorney fees as punitive.

"Either parent in a parental relocation matter may recover reasonable attorney fees and other litigation expenses from the other parent in the discretion of the court." Tenn. Code Ann. § 36-6-108(i)(2008). We review a trial court's decision to award such fees under an abuse of discretion standard. *Huntley v. Huntley,* 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001); *see also Lima*, 2011 WL 3445961, at *9 (citing *In re H.L.B-K*., 2010 WL 4940586, at *6). As such, we are obliged to affirm the trial court's award so long as reasonable minds could disagree about its correctness. *Id.*

We have reviewed the voluminous record in this case and find no error in the trial court's observations emphasizing the parties' income disparities. "[W]e are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill,* 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). Under all of the circumstances in this case, we find no abuse of discretion in the trial court's attorney fee award, and so affirm that as well.

---

[7]Father argues on appeal that the trial court erred in finding Mother's testimony more credible than that of Father. Our holdings on vindictive motive and reasonable purpose are based largely on undisputed facts, so we find it unnecessary to consider this issue on appeal.

**CONCLUSION**

The decision of the trial court is affirmed. Costs on appeal are assessed against Petitioner/Appellant John Daniel Rudd and his surety, for which execution may issue if necessary.

_____

HOLLY M. KIRBY, JUDGE